UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARMEN MEJIA and RAYMUNDO
MORATAYA, individually and on behalf of
Jeovani Morataya, a minor,

                    **Plaintiffs,**

-vs-                                                                 Case No. 6:09-cv-1348-Orl-31GJK

**UNITED STATES OF AMERICA,**

                    **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Dismiss for Lack of Jurisdiction (Doc. 28) filed by the Defendant, the United States of America (the "Government"), and the response (Doc. 29) filed by the Plaintiffs, Carmen Mejia ("Mejia") and Raymundo Morataya.

### I. Background

According to the allegations of the Complaint (Doc. 1), Mejia gave birth at Florida Hospital on January 18, 2008. The baby was delivered by Lawrence Decker ("Decker"), who was an employee of Community Health Centers, Inc. ("Community Health") and who had privileges at Florida Hospital. The Plaintiffs assert that Decker responded negligently to a medical emergency that occurred during the delivery, causing the baby to suffer a brachial plexus injury and permanent brain damage. The Plaintiffs also assert that Community Health was negligent in the prenatal care it provided to Mejia before the date of the delivery. In the instant motion, the Government seeks dismissal of the allegations as to the pre-natal care provided to Mejia on the grounds that the

Plaintiffs failed to include those allegations in the administrative claim they filed before instituting this suit.

## II.  Legal Standards

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, waives the Government's sovereign immunity for claims for money damages in regard to, among other things, personal injury or death caused by the negligent act of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable.  28 U.S.C.§ 1346(b)(1).  Pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g)-(n), Community Health and its employees are deemed employees of the United States Public Health Service, and the FTCA provides the exclusive remedy for their allegedly negligent conduct.  28 U.S.C. § 2679.

A plaintiff who sues under the FTCA must first present his or her claim to the appropriate federal agency within two years after such claim accrues.  28 U.S.C. § 2675(a).  This prerequisite must be met as to each claim the FTCA claimant hopes to assert.  *Dalyrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006).  This requirement is jurisdictional, and may not be waived by the Government.  *Id.*

In the Basis for Claim section of their administrative claim, the Plaintiffs asserted the following:

> As the result of negligence on the part of the U.S. Department of Health and Human Resources, United States of America d/b/a Community Health Centers, Inc. and Apopka Family Health Centers and Lawrence Decker, D.O. on 1/18/08, my son, Jeovani Morataya, suffered injuries during his birth at Florida Hospital Rollins.  Dr. Decker failed to timely identify and appropriately treat signs and symptoms consistent with fetal distress as well as needlessly delayed delivery.  The fetal distress suffered by Jeovani is supported by PH Cord Blood Gas of 7.03 at delivery.

>He also negligently failed to accurately estimate fetal weight of Jeovani prior to delivery so as to prevent foreseeable shoulder dystocia. During the delivery of Jeovani, he further failed to timely and appropriately treat a shoulder dystocia. Appropriate precautions to resolve shoulder dystocia were not performed. Inappropriate excessive traction was applied to Jeovani during his delivery. As a result of the above, Jeovani was born with a permanent hypoxic neurological injury and brachial plexus injury. See records attached.

Clearly, these allegations focus on Decker's actions during the course of the delivery and make no reference to pre-natal care.[1] The Plaintiffs assert these same claims against Decker and Community Health in their Complaint. However, in the Complaint they also raise claims related to pre-natal care, including claims that Decker and other Community Health employees negligently failed to institute "timely and appropriate measures to address the gestational diabetes and obesity of Carmen Mejia prior to the delivery."[2] (Doc. 1 at 5).

The Plaintiffs argue that their administrative claim, was sufficient to put the Government on notice that, in their view, the injuries that occurred during the delivery resulted in part from the pre-natal care provided to Mejia. They note that the administrative claim names Community Health and the medical facility it operates, which is where she received her pre-natal care. They contend that if the Government had conducted a proper investigation based on the information provided in the administrative claim, it would have discovered that she presented at Community Health's facility for pre-natal care with several obvious risk factors for delivering a baby that might encounter a shoulder dystocia at birth.

---

[1] It is undisputed that Decker was the only employee of Community Health present at Florida Hospital during the delivery, and that he had not seen or provided treatment to Mejia prior to the delivery.

[2] The Plaintiffs allege that gestational diabetes and obesity are among the risk factors for delivery of a baby that might encounter shoulder dystocia.

To satisfy 28 U.S.C. § 2675(a), the claimant must give the appropriate agency "written notice of his or her claim sufficient to enable the agency to investigate". *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999). In *Burchfield*, the plaintiff asserted in his administrative claim that

> Beginning August of 1990 and in subsequent years, physicians employed by the Department of Veterans Affairs prescribed a medication for Mr. Burchfield, prednisone. Mr. Burchfield's use of this medicine caused him to develop osteoporosis, resulting in severe and continuing maladies and injuries, including but not limited to the collapse or fracture of several vertebrae and ribs. . . . These injuries resulted from negligence of the Department's agents.

*Id.* at 1254. At trial, the plaintiff argued that the negligence at issue was not the prescribing of prednisone, but a failure to prescribe a regimen of dietary supplements to prevent the osteoporosis that prednisone is known to cause, as well as a failure to monitor him for signs of osteoporosis. *Id.* The trial judge found that the claim presented at trial, focusing on diet and monitoring, significantly differed from the claim asserted administratively, which focused solely on the act of prescribing prednisone. *Id.* The trial judge found that the court lacked jurisdiction to hear the claims that had been asserted at trial. *Id.*

The appellate court reversed, finding that the administrative claim was sufficient. In the words of the appellate court:

> In this case, it is hard to imagine what facts Burchfield could have included in his administrative claim that would have allowed the VA to conduct a more thorough investigation of the claim. The claim stated all the essential aspects of Burchfield's case – the time period, the fact that his doctors had prescribed Prednisone, the causal link between his use of the Prednisone and his osteoporosis, and the assertion that the VA's agents were negligent – although it did not contain every factual detail that he later introduced at trial. These other details, such as his doctors' failure to prescribe dietary supplements and to monitor his condition, were so closely related to the essential material contained in the claim that they would have come to light during the VA's reasonable investigation of the claim. An

>agency cannot use an overly technical reading of the language of a claim as a reason to turn a blind eye to facts that become obvious when it investigates the alleged events.

The Plaintiffs argue that their claim, like Burchfield's was good enough. The Court disagrees. Unlike Burchfield, the Plaintiffs's administrative claim did nothing to suggest a causal link between the baby's injuries and Mejia's pre-natal care. Although the facility where Mejia received her pre-natal care was mentioned in the administrative claim, its presence is explained by the fact that Decker was employed there.

The negligent conduct asserted in the administrative claim consists of Decker's actions at Florida Hospital on the delivery date, responding to the shoulder dystocia. The additional conduct which the Plaintiffs have asserted in the Complaint consists of other medical professionals' actions at another medical facility some weeks or months prior to the delivery, responding to Mejia's likelihood of delivering a baby that would encounter shoulder dystocia. The latter is not "so closely related" to the former that it "would have come to light during [a] reasonable investigation" of the claim. Stated differently, a reasonable investigation of these allegations that Decker negligently performed a delivery of a baby encountering shoulder dystocia would not lead one to investigate whether other medical professionals at a different facility had negligently failed to respond, weeks or months earlier, to the mother's risk factors for this condition.

Because they were not raised in the administrative complaint, the Plaintiffs' allegations

regarding Mejia's pre-natal care are not within this Court's subject matter jurisdiction.

Accordingly, it is hereby **ORDERED** that the Motion to Dismiss for Lack of Jurisdiction (Doc. 28) is **GRANTED**, and all claims related to the pre-natal care provided to Mejia are **DISMISSED** for lack of subject matter jurisdiction.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 16, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party